UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZEEWE D. IMPALA : | |
|     Plaintiff : | |
| : | CIVIL ACTION NO. |
| v. : | |
| : | 3:10-cv-505 (VLB) |
| MICHAEL J. ASTRUE, : | |
|     COMMISSIONER : | |
| SOCIAL SECURITY ADMINISTRATION, : | |
|     Defendant : | June 15, 2011 |

**MEMORANDUM OF DECISION DENYING THE PLAINTIFF'S MOTION TO REVERSE AND REMAND AND GRANTING THE COMMISIONER'S MOTION TO AFFIRM**

The plaintiff, Zeewe D. Impala, filed this action seeking review of the final decision of the defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying his application for supplemental security income. The plaintiff has filed a motion to reverse the Commissioner's decision and to remand the case [Doc. #18], and the Commissioner has filed a motion to affirm [Doc. #22]. For the reasons given below, the plaintiff's motion to reverse and to remand is DENIED, and the Commissioner's motion to affirm is GRANTED.

**I. ADMINISTRATIVE PROCEEDINGS**

The plaintiff alleged that he became disabled on January 1, 1988, at age 33. [Tr. 103] He received supplemental security income because of a back injury from June 1991 to March 1997. [Tr. 155, 336] His benefits were terminated in April 1997 due to his federal conviction of bank robbery and a firearms violation,

1

which added to his already significant criminal record stretching back to the 1970s. [Tr. 155, 335-36] After being released from prison in February 2008, the plaintiff filed his current application for supplemental security income on March 3, 2008, alleging that he suffered from a blood disease known as leukopenia, an enlarged prostate with bladder incontinence, cataracts, personality disorder, and schizophrenia. [Tr. 10, 103] His application was denied, and he then requested a hearing before an Administrative Law Judge ("ALJ"). [Tr. 52] ALJ Robert A. DiBiccaro held a hearing, which consisted of testimony by the plaintiff, on May 11, 2009. [Tr. 12-42] The ALJ then issued his decision on September 2, 2009, finding that the plaintiff was not disabled and therefore not entitled to supplemental security income. [Tr. 4-11]

The ALJ applies a five-step sequential evaluation process to an application for supplemental security income. First, the ALJ determines whether the claimant is performing substantial gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing such activity, the ALJ proceeds to the second step to determine whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments. § 416.920(a)(4)(ii). The impairment must be expected to result in death or must last or be expected to last for a continuous period of at least twelve months. § 416.909. If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment meets or equals an impairment listed in appendix 1 of the applicable regulations. § 416.920(a)(4)(iii). If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.

2

If the claimant does not have a listed impairment, the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. § 416.920(a)(4)(iv). RFC is defined as the most that a claimant can do despite the physical and mental limitations that affect what he can do in a work setting. § 416.945(a)(1). If the claimant's RFC indicates that he cannot perform his past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available in the national economy in light of his RFC, age, education, and work experience. § 416.920(a)(4)(v). The claimant is entitled to supplemental security income if he is unable to perform other such work. The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

In the present case, the ALJ determined that the plaintiff was not performing substantial gainful activity and did not have any medically determinable impairments. [Tr. 9-11] The ALJ considered the plaintiff's alleged impairments, but the objective medical evidence showed that those conditions were not severe. [Tr. 9-11] The ALJ accordingly ended his analysis at step two of the sequential evaluation process and concluded that the plaintiff was not disabled. [Tr. 11] The Commissioner's Decision Review Board selected the plaintiff's claim for review but then notified him on January 28, 2010 that it had failed to complete its review of the ALJ's decision within the required ninety days. [Tr. 1-3] The ALJ's decision thus became final, and the plaintiff then filed the present case.

## II. STANDARD OF REVIEW

Following the denial of a supplemental security income claim, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); see also id. § 1383(c)(3).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. . . . Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

## III. DISCUSSION

In the present case, the plaintiff argues that (1) remand is required to allow the ALJ to consider a medical report completed by Dr. Sidney Bogardus, (2) the

4

ALJ improperly failed to develop the record, (3) the ALJ improperly determined that the plaintiff lacked a severe impairment, and (4) the ALJ improperly assessed the plaintiff's credibility.

### A. Dr. Bogardus's Medical Report

The plaintiff first argues that the ALJ must consider a medical report completed by the plaintiff's treating gastroenterologist, Dr. Bogardus, on February 9, 2010, which was twelve days after the Commissioner's Decision Review Board notified the plaintiff of final agency action in his case. Dr. Bogardus completed the report in conjunction with the plaintiff's application for benefits with the Connecticut Department of Social Services. In the report, Dr. Bogardus indicated that he had been treating the plaintiff for hepatitis C and leukopenia since March 6, 2009, which was approximately two months before the ALJ hearing. [Doc. #18, Ex. A, p. 4] Dr. Bogardus reported that the plaintiff's conditions prevented him from working for six months or more. [Doc. #18, Ex. A, p. 3] He did not opine that he would be prevented from working for at least twelve consecutive months. Dr. Bogardus wrote that the plaintiff's "[t]reatment caused significant symptoms, both physical and mental. These treatment effects likely exacerbate [his] underlying psychiatric issues and affect [his] ability to work. Overall prognosis [is] good for hepatitis C [but] unclear otherwise." [Doc. #18, Ex. A, p. 3] Dr. Bogardus did not fill out the physical capacity evaluation and mental RFC assessment portions of the report. In the mental status information section of the report, Dr. Bogardus acknowledged that he was "not a psychiatrist," but he

5

nevertheless wrote: "Patient appears to suffer from depressive and anxiety symptoms and possibly other issues. His hepatitis C treatment may exacerbate this." [Doc. #18, Ex. A, p. 6] In the medications section of the report, Dr. Bogardus explained that the plaintiff's medications "can [theoretically] cause mood changes, anxiety, sleep disturbance, fatigue — all can affect ability to work." [Doc. #18, Ex. A, p. 10 (emphasis added)]

In order for the Court to remand a case to the Commissioner for consideration of additional evidence, the plaintiff "must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record . . . and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative . . . . The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [the] claimant's application differently. . . . Finally, [the] claimant must show (3) good cause for [his] failure to present the evidence earlier." Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988).

In the present case, the plaintiff argues that Dr. Bogardus's report meets the first prong of the Tirado test because Dr. Bogardus opined on the plaintiff's ability to work and the relationship among his impairments. The Commissioner argues that the report is merely cumulative because the record already contains Dr. Bogardus's treatment notes, and he failed to fill out the physical capacity evaluation and mental RFC assessment portions of the report. Although it is a close call due to the report's incompleteness and relative lack of detail, the Court agrees with the plaintiff that the report qualifies as new evidence pursuant to

Tirado because Dr. Bogardus's treatment notes do not provide the opinions contained in the report.

As to the second prong of Tirado, the plaintiff contends that the report is relevant and probative because it is the only opinion evidence provided by a treating source. The plaintiff further argues that the ALJ would have found that the plaintiff had severe impairments if the ALJ had been able to consider the report. The Commissioner contends that the report failed to identify physical or mental limitations bearing on the plaintiff's ability to work. The Commissioner also argues that Dr. Bogardus identified the duration of the plaintiff's conditions as six months or more, while a minimum duration of twelve months is required by 20 C.F.R. § 416.909.

The Court agrees with the Commissioner's arguments and determines that the plaintiff has not met his burden of showing a reasonable possibility that the report would have caused the ALJ to reach a different decision. Dr. Bogardus reported a good prognosis for the plaintiff's hepatitis C but was "unclear" as to the leukopenia. [Doc. #18, Ex. A, p. 3] Dr. Bogardus stated that the plaintiff's treatment would "likely" worsen his "psychiatric issues" and impact his ability to work, but Dr. Bogardus did not explain how the plaintiff's ability to work would be affected. [Doc. #18, Ex. A, p. 3] Dr. Bogardus was similarly imprecise when he noted that the plaintiff "appears to suffer" from depression, anxiety, and "possibly other issues," which "may" be worsened by his hepatitis C treatment. [Doc. #18, Ex. A, p. 6] As Dr. Bogardus forthrightly acknowledged, he is a gastroenterologist, not a psychiatrist, so it is not reasonably possible that the

7

ALJ would accept his uncertain opinions regarding the plaintiff's mental condition. Dr. Bogardus failed to evaluate the plaintiff's physical capacity and assigned less than the minimum required duration to the plaintiff's possible conditions. The equivocality of Dr. Bogardus' report is further illustrated by its statement that the plaintiff's medications "can cause" side effects and "can affect ability to work." He did not state that the plaintiff actually experienced the specific side effects or that they actually affected his ability to work. [Doc. #18, Ex. A, p. 10]. Moreover, Dr. Bogardus did not state that Impala would suffer symptoms preventing him from working for twelve or more months. In light of all of the weaknesses in Dr. Bogardus's report, it is not reasonably possible that the ALJ would have concluded that the plaintiff had a severe impairment if the ALJ had been able to review the report. The report does not satisfy the materiality requirement of <u>Tirado</u>.

The Court notes that the plaintiff also has not shown good cause under the third prong of <u>Tirado</u>. Dr. Bogardus began treating the plaintiff on March 6, 2009, the ALJ hearing occurred on May 11, 2009, the ALJ issued his decision on September 2, 2009, and Dr. Bogardus completed the report five months later on February 9, 2010, approximately one week after Impala was notified by the Decision Review Board that it failed to complete its review of his case. Nothing in the report suggests that it could not have been completed within the first few months of treatment. The report was not dependent upon any information that arose after the case was submitted to the ALJ for consideration. The circumstances suggest that the only reason Dr. Bogardus completed the report

8

on February 9, 2010 was because the plaintiff decided to apply for benefits with the Connecticut Department of Social Services, and the report was part of that application. As the plaintiff has failed to meet the second and third prongs of <u>Tirado</u> as to Dr. Bogardus's report, the case may not be remanded to the Commissioner on that basis.

### B. <u>Development of the Record</u>

The plaintiff next argues that the ALJ improperly failed to develop the record. Both the ALJ and the claimant have obligations in assembling the record. The claimant has the burden of producing evidence: "[The claimant] must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [the claimant's] medical impairment(s)." 20 C.F.R. § 416.912(a). The ALJ must affirmatively develop the record: "Even when a claimant is represented by counsel . . . the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." <u>Moran v. Astrue</u>, 569 F.3d 108, 112 (2d Cir. 2009).

The plaintiff contends that the ALJ should have (1) considered the plaintiff's supplemental security income application associated with his back injury in approximately 1991 and (2) obtained opinions from his treating physicians, such as Dr. Bogardus. As to the 1991 application, the Commissioner states that it was unavailable because it had been destroyed. Regardless of its availability, it does not appear to be relevant because it concerned a back injury

9

while the plaintiff's current application did not allege a back injury. As to opinions from treating physicians, the Court determined in part III-A that it was not reasonably possible that Dr. Bogardus's opinion would have changed the ALJ's decision. The Commissioner points out that the plaintiff refused to submit to a consultative medical examination even though the Commissioner warned him that the record contained insufficient evidence to support his claims. [Tr. 160] The plaintiff stated that any consultative examiner would be biased. [Tr. 145] The ALJ had Dr. Bogardus' treatment notes. At the ALJ hearing, the plaintiff was represented by counsel who confirmed that the record was complete. [Tr. 18] On the basis of those facts, the Court concludes that the ALJ satisfied his obligation to develop the record. The plaintiff could have augmented the record by complying with the Commissioner's request for a consultative examination, but the plaintiff refused.

### C. The Plaintiff's Impairments

The plaintiff next argues that the ALJ improperly determined that his impairments were not severe. In order to be severe, an impairment must significantly affect the claimant's ability to do basic work activities. 20 C.F.R. § 416.920(c). As to his hepatitis C and leukopenia, the plaintiff cites Dr. Bogardus's report, which the Court has already determined to be insufficiently persuasive. As to his mental health, the plaintiff cites prison psychiatry records from 1998 and 1999. Although the plaintiff was diagnosed with polysubstance dependence and personality disorder with narcissistic and antisocial features, the psychiatrist

10

determined that they "did not have a significant impact on [the plaintiff's] mental or emotional condition . . . during the current evaluation." [Tr. 341] There are no subsequent mental health records. As to his enlarged prostate with bladder incontinence, the plaintiff cites two complaints about incontinence in prison in 2005, including a request for diapers, and a treatment note from March 6, 2009 indicating that he had to urinate "more than twice" at night. [Tr. 541] That evidence does not show a significant impact on his ability to work. The ALJ properly reviewed the evidence and determined that the plaintiff's impairments were not severe.

### D. <u>The Plaintiff's Credibility</u>

The plaintiff's last argument is that the ALJ improperly assessed his credibility. The ALJ's examination of credibility begins with a determination of whether the claimant suffers from an underlying medical impairment that could reasonably be expected to cause the alleged symptoms. 20 C.F.R. § 416.929(b). If so, the ALJ considers the objective medical evidence and other evidence of symptoms, including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; (5) treatment to relieve the symptoms, other than medication; (6) any measures the claimant has used to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions relating to the symptoms. §§ 416.929(c)(2) through (c)(3).

In the present case, the ALJ determined that the plaintiff did not have any medically determinable impairments. The Court reviewed that finding in parts III-A and III-C, concluding that the ALJ's determination was proper. The ALJ was therefore not required to proceed with a credibility assessment pursuant to § 416.929. The ALJ nonetheless found that the plaintiff was "not fully credible" because the medical evidence did not support his claim that he was unable to work. [Tr. 11] That finding, although not required, was proper due to the inconsistency between the plaintiff's subjective claim and the objective medical evidence and its consistency with the objective medical evidence. Moreover, to the extent a credibility assessment was improper, it was harmless because it did not affect the outcome.

## IV. <u>CONCLUSION</u>

The plaintiff's motion to reverse and to remand [Doc. #18] is DENIED, and the Commissioner's motion to affirm [Doc. #22] is GRANTED. The Clerk is directed to CLOSE this case.

                IT IS SO ORDERED.

                    /s/

                Vanessa L. Bryant
                United States District Judge

Dated at Hartford, Connecticut:  June 15, 2011.